UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LEROY HOUCHIN, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO. 3:15-CV-030 JD |
| v. | ) | |
| | ) | |
| PAUL HEATEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Leroy Houchin, II, a *pro se* prisoner, is suing Detective Paul Heaten in his individual capacity for monetary damages. Houchin alleges that Detective Heaten violated his Fourth Amendment rights by conducting a warrantless search of his residence on June 12, 2014. Detective Heaten filed a summary judgment motion arguing that the undisputed facts show that the search was not illegal and that he is entitled to qualified immunity. Detective Heaten also seeks to strike a number of filings Houchin submitted in response to his motion for summary judgment.

I. Motions to Strike

Detective Heaten filed three motions (DE 56, 63, 67) to strike various documents filed by Houchin in response to his motion for summary judgment. Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The 2010 Comments to that rule explain that "[t]here is no need to make a separate motion to strike." Therefore the motions will be denied and construed as a Rule 56(c)(2) objection. The defendant argues that the

documents are "immaterial," "unauthorized," "unsworn and inadmissible." (DE 63 at 2; DE 67 at 1.) However, the defendant does not argue that these documents "cannot be presented in a form that would be admissible in evidence" – only that they have not now been presented in such a form. Pursuant to Rule 56(e), the court has numerous options "[i]f a party fails to properly support an assertion of fact . . .." Motions to strike are usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp. 2d 690, 695 (N.D. Ind. 2009). That is not the case here.

When ruling on the motion for summary judgment, the court is capable of sifting through the evidence, arguments and purported disputes under the applicable federal rules and case law, giving each purported dispute the credit to which it is due. Therefore, there is no need to strike any statements or filings made by Houchin in response to the motion for summary judgment.

II. Motion for Summary Judgment

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record" or show "that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (holding that a failure to prove one essential element necessarily renders all other facts immaterial).

In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable fact finder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

A. Facts

The events leading up to the search of Houchin's home are largely undisputed. Detectives Paul Heaten and R.J. Nethaway from the Kosciusko Sheriff's Department were investigating the dealing and use of illegal drugs at Houchin's residence. (Ex. A, Heaten Decl. ¶¶ 3-5; Ex. B, Nethaway Decl. ¶¶ 3-5.) When they arrived at Houchin's residence on June 12, 2014, they observed Jennifer Moore exiting the residence. (Ex. A ¶ 7.) Detective Heaten discovered that Moore had 8 morphine pills in her possession. (Id.) Detective Heaten placed Moore in handcuffs because he believed that she had just purchased the morphine tablets from Houchin. (Id. at ¶ 8.) Detective Heaten stayed with Moore while Nethaway approached Houchin's residence. (Ex. B ¶¶ 8-9.)

Nethaway knocked on Houchin's door and Houchin opened the door. (Ex. B ¶ 9; DE 59 at 1.) Nethaway asked if he could come in the home and speak with Houchin. (Ex. B ¶ 9.) Houchin agreed. (DE 59 at 1.) Nethaway then asked if he could search Houchin's home, but Houchin refused. (Ex. B. ¶ 13; DE 59 at 1.) Nethaway told another officer to let Detective Heaten know that they may need to obtain a search warrant. (Ex. B ¶ 13.) Approximately nineteen (19) minutes after Nethaway entered Houchin's residence, Detective Heaten went into Houchin's residence. (Ex. A ¶¶ 9-10; Ex. B ¶ 16.) As Detective Heaten stood in the living room area, Nethaway told him that Houchin refused permission to search his residence. (Ex. A ¶ 11.) What follows is largely disputed.

According to Detective Heaten, while talking with Houchin in the living room, he observed a prescription pill bottle that contained morphine pills in a nearby bedroom, the door of which was open. (Id. at ¶ 13.) Detective Heaten walked a few feet over to the prescription bottle

4

and saw that the label indicated that the morphine was prescribed to Houchin. (Id.) Detective Heaten told Houchin that he had just found the same morphine pills in Moore's possession outside of the residence. (Id.) Houchin admitted selling morphine pills. (Ex. A ¶ 15; Ex. B ¶ 18.) Detective Heaten then asked Houchin if he had anything illegal in the residence, and Houchin located a plate of marijuana under the couch in the living room. (Ex. A ¶ 16; Ex. B ¶ 19.) The detectives say that Houchin admitted he had traded pills with another person and that he was supposed to receive marijuana for the morphine pills. (Ex. A ¶ 17; Ex. B. ¶ 17.) Detective Heaten informed Houchin that they were taking him to jail for dealing a controlled substance, possession of a controlled substance, and conspiracy to deal a controlled substance. (Ex. A ¶ 19; Ex. B ¶ 20.) Detectives Heaten and Nethaway then accompanied Houchin to his bedroom so that Houchin could put on his shoes before being taken to jail. (Ex. A ¶ 20; Ex. B ¶ 21.) While in the bedroom, the detectives claim to have heard a clicking sound coming from the bedroom closet and asked Houchin if any one else was in the residence. (Ex. A ¶ 21; Ex. B ¶ 22.) They were concerned someone may have been hiding in the closet, so they drew their firearms and Detective Heaten opened the closet door only to find a small marijuana growing operation. Detective Heaten believes the clicking he heard was likely the timer for the marijuana grow light. (Ex. A ¶ 22; Ex. B ¶ 23.)

Houchin claims a far different scenario took place in his home. Houchin states Detective Heaten did not see the pill bottle in his bedroom while they were talking in the living room. He explains that the pill bottle was on a night stand behind the bedroom door and was not in Detective Heaten's view from the living room. (DE 61 at 1.) Instead, Houchin asserts that, when Nethaway told Detective Heaten that they could not search the house without a search warrant

Detective Heaten simply shrugged his shoulders, disregarded that directive, and walked into Houchin's bedroom where he found Houchin's pill bottles. (DE 52 at 1; DE 59 at 1; DE 61 at 1; DE 62 at 1.) Houchin says that after Detective Heaten finished searching the prescription pill bottles, Detective Heaten then "went straight to my closet and opened the door and also went through my dresser drawers." (DE 52 at 1.) After he finished searching Houchin's bedroom and located the marijuana plants and prescription pills, Detective Heaten returned to the living room and began questioning Houchin about selling drugs. (*Id*.)

Ultimately, Houchin was charged with two drug related felonies under Cause No. 43C01-1406-FB-424 in Kosciusko County. (Ex. A ¶¶ 27-28; Ex. E.) Houchin entered into a plea agreement and pled guilty to Possession of a Controlled Substance.

      B.     Was the warrantless search of Houchin's
            bedroom violative of the Fourth Amendment?

Houchin brings a claim against Detective Heaten for illegally searching his home without a warrant in violation of the Fourth Amendment. As a threshold matter, Houchin did not challenge the validity of any search in his underlying criminal case. Thus, he is not precluded from doing so here. *Haring v. Prosise*, 462 U.S. 306 (1980). "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated . . . ." U.S. CONST. AMEND. IV. The Fourth Amendment generally protects an individual's right to be free from warrantless intrusions into the home. *United States v. Foxworth*, 8 F.3d 540, 544 (7th Cir. 1993). However, there are exceptions to the warrant requirement. Among these are the plain view doctrine, protective sweep exception, and the

search incident to arrest. *Kentucky v. King*, 563 U.S. 452, 459 (2011). Detective Heaten argues that each of these three exceptions apply in this case.

      1.      There is a genuine dispute as to whether Detective Heaten's search of Houchin's pill bottle was made pursuant to the plain view doctrine.

Detective Heaten argues that he was entitled to search the prescription pill bottle in Houchin's bedroom under the plain view doctrine. A warrantless seizure is justified under the plain view doctrine when: (1) a law enforcement officer is lawfully present; (2) an item is in the plain view of the officer; and (3) the incriminating nature of the item is immediately apparent." *United States v. Berkowitz*, 927 F.2d 1376, 1388 (7th Cir. 1991).

As to the first element, Houchin argues that Detective Heaten was not lawfully present in his home because he did not let him in the residence. However, a person's consent to an officer's entry of his home need not be express or verbal. *United States v. Cotnam* v. 88 F.3d 487, 495 (7th Cir. 1996). Houchin admits that he consented to the entry of Detective Nethaway into his residence. (DE 59 at 1.) A few minutes later, Detective Heaten entered Houchin's residence. Houchin does not claim to have ever requested Detective Heaten to leave or objected to his presence. Although Houchin may not have expressly consented to Detective Heaten's presence in his home, the undisputed facts show that Detective Heaten was lawfully present. *See id.* (determining it was reasonable for the officers to conclude that the plaintiff had consented to enter the room after the plaintiff led the officers into the room and never objected to their entrances into the room); *United States v. Villegas*, 388 F.3d 317, 225 (7th Cir. 2004) (noting that consent may be manifested in a non-verbal as well as verbal manner).

7

The next relevant question is whether the prescription pill bottle on the night stand in Houchin's bedroom was in plain view of Detective Heaten. This is a disputed fact. Detective Heaten claims that he saw the prescription pill bottle from the living room through an open bedroom door and the incriminating nature of the pills were immediately apparent to him. *Id.* However, Houchin claims that the night stand containing the pill bottle was not visible from the living room and Detective Heaten only saw the pill bottle after unlawfully entering into his bedroom. Surely, if Detective Heaten saw the prescription pills in plain view from the living room, then he may have been permitted to search them under the plain view doctrine. However, if Detective Heaten only saw the prescription pill bottle after entering Houchin's bedroom, then the plain view doctrine would be inapplicable. At this stage, the court must credit Houchin's account of what took place. Because the applicability of the plain view doctrine hinges on a genuine dispute of facts, summary judgment on this claim is inappropriate.

    2.    There is a genuine dispute as to whether the search of
<u>the pill bottles was made pursuant to a valid search incident to arrest.</u>

Detective Heaten also argues that he was entitled to search and seize the prescription pill bottle as part of a search incident to Houchin's arrest. Detective Heaten relies on *Chimel v. California*, 395 U.S. 752 (1969), where the Supreme Court held that, in the absence of a search warrant, a justifiable search incident to an in-home arrest extends to "the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763. Thus, the justification for the search incident to arrest exception is the threat posed by the arrestee. *Id.* Without developing this argument, Detective Heaten simply claims that Houchin's bedroom "was an area

that Houchin might have been able to gain possession of a weapon." However, based on the disputed facts already discussed above, there is a question of whether Detective Heaten was justified to search Houchin's bedroom when Houchin was arrested in the living room. Thus, summary judgment cannot be granted on this claim either.

        3.        There is a genuine dispute as to whether the marijuana grow operation was discovered in Houchin's bedroom pursuant to a protective sweep.

Detective Heaten argues that he searched Houchin's closet and discovered the marijuana grow operation during the course of a protective sweep. A protective sweep is another exception to the general prohibition on warrantless searches of a person's home. *Maryland v. Buie*, 494 U.S. 325, 331 (1990). Under the protective sweep exception, officers may, incident to arrest and "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. An officer searching beyond those parameters would be justified when there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."

The question of whether the marijuana was discovered in Houchin's bedroom closet pursuant to a protective sweep is disputed. According to Detective Heaten, he and Nethaway escorted Houchin into his bedroom after Houchin requested to put on his shoes before he was taken to jail. While in the bedroom, Detective Heaten opened the closet door to make a cursory inspection after hearing a noise that sounded like a creak or a click coming from behind the

closet door. Detective Heaten says he was concerned that a person may have been hiding in the closet. Again, if Detective Heaten is telling the truth, then he would be entitled to open the closet door during the course of a protective sweep. *Id.* However, Houchin disputes Detective Heaten's account. He claims that Detective Heaten searched his bedroom closet before he was placed under arrest. Houchin says that immediately following Detective Heaten entering his bedroom and looking through his prescription pill bottles, Detective Heaten continued to search his bedroom, which included opening the closed closet door. Consequently, the court cannot grant summary judgment on this claim because whether the marijuana was discovered pursuant to a protective sweep rests on a genuine dispute.

4. There is a genuine dispute as to whether Detective Heaten is entitled to qualified immunity.

Detective Heaten argues that, even if he committed a constitutional violation, he is nevertheless entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and parallel citations omitted). There is a two-part inquiry for determining whether the defense applies: (1) whether the facts alleged by the plaintiff show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Id.* This does not require inquiry into the defendant's subjective intent. *Harlow,* 457 U.S. at 816-18. Instead, the question is one of "the

objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Id.* at 818. So to decide whether Detective Heaten has qualified immunity, the court must determine "the currently applicable law," as well as "whether that law was clearly established at the time an action occurred." *Id.* As the Supreme Court further explained, "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. *Id.*

The facts alleged by Houchin are that Detective Heaten came into his house, knew that he was not permitted to search, and nevertheless entered and conducted a search of Houchin's bedroom. Houchin alleges that there was no contraband in plain view, and that the search was not incident to his arrest or related to any protective sweep. Based on Houchin's version of events, Detective Heaten's actions clearly violated the established law. As the cases cited in the prior sections of this opinion demonstrate, in 2014, no reasonable police officer could have believed it was legal to conduct a warrantless search of a person's home under these circumstances. Therefore Detective Heaten has not demonstrated that he is entitled to qualified immunity.

III.    Conclusion

So as explained, the summary judgment motion must be denied because there are genuine issues of disputed fact in regard to whether Houchin's prescription pill bottle was in plain view of Detective Heaten; whether the search of the prescription pill bottle would have been a search incident to Houchin's arrest; and whether Detective Heaten looked in the bedroom closet and

found the marijuana grow operation during the course of a protective sweep. These are the issues which remain for trial.

For the foregoing reasons, the court:

(1) **DENIES** the motions to strike (DE 56, 63, 67); and

(2) **DENIES** the summary judgment motion (DE 45).

SO ORDERED.

ENTERED: December 22, 2016

                                                                          S/ JON E. DEGUILIO  
                                                                          Judge  
                                                                          United States District Court